Michael Faillace, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
Tel: (212) 317-1200
Fax: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRYAN KOEGEL,<br><br>*Plaintiff*,<br><br>-v-<br><br>PLEASE HOLD (UK) LIMITED (d/b/a PH MEDIA GROUP and PHMG), PH MEDIA (USA) INC., THE PORTER GROUP INC., GRANT LAWRENCE REED, MARK WILLIAMSON, MELANIE FRANCIS, and CHRISTOPHER BERISFORD,<br><br>*Defendants*. | Case No.<br><br>**COMPLAINT**<br><br>JURY DEMAND |

Plaintiff Bryan Koegel, by and through the undersigned counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Bryan Koegel ("Plaintiff") brings this action to recover damages for fraud, fraudulent inducement, civil conspiracy, aiding and abetting fraud, breach of contract, unjust enrichment, constructive fraud, and negligent misrepresentation. Defendants presented Plaintiff with a false, formal employment offer (the "Initial Offer") in order to lure Plaintiff into working for Defendants PLEASE HOLD (UK) LIMITED (d/b/a PH MEDIA GROUP and PHMG), PH MEDIA (USA) INC., GRANT LAWRENCE REED, MARK WILLIAMSON, MELANIE FRANCIS, and CHRISTOPHER BERISFORD (collectively, the "PH Media Defendants"). The PH Media Defendants later fraudulently coerced Plaintiff into signing a different employment

agreement, an independent contractor agreement (the "Independent Contractor Agreement"), which contained completely different terms and conditions than the Initial Offer. Notwithstanding the fraudulent measures that the PH Media Defendants took in order to coerce Plaintiff to sign the Independent Contractor Agreement, the PH Media Defendants failed to uphold their obligations under it.

## PARTIES

*Plaintiff*

2. Plaintiff BRYAN KOEGEL is an individual residing in Montgomery County, Pennsylvania, and he is a citizen of the State of Pennsylvania.

*Defendants*

3. Defendant PLEASE HOLD (UK) LIMITED (d/b/a PH MEDIA GROUP and PHMG) ("Please Hold") is a United Kingdom private limited company, with offices located at Oakland House, Talbot Road Old Trafford, Manchester, Lancashire, M16 0PQ.

4. Upon information and belief, at all times relevant to this Complaint, Please Hold was and continues to be an unregistered foreign entity nevertheless doing business in the State of New York and numerous other States.

5. Defendant PH MEDIA (USA) INC. ("PH Media USA" and collectively with Please Hold, "PH Media") is a Delaware corporation with its principal place of business in the State of Illinois, at 401 N. Michigan Ave., Ste. 1725, Chicago, IL 60611.

6. Defendant GRANT LAWRENCE REED ("Defendant Reed" or "Mr. Reed") is a resident of the United Kingdom, and is a fifty percent (50%) owner and a Director of Please Hold.

7. Upon information and belief, Defendant MARK WILLIAMSON ("Defendant Williamson" or "Mr. Williamson") is a resident of the United Kingdom and, at all times relevant,

served as Sales and Marketing Director of PH Media.

8. Upon information and belief, Defendant MELANIE FRANCIS ("Defendant Francis" or "Ms. Francis") is a resident of the United Kingdom and, at all times relevant, served as an in-house recruiter for PH Media.

9. Upon information and belief, Defendant CHRISTOPHER BERISFORD ("Defendant Berisford" or "Mr. Berisford") is a resident of the United Kingdom and, at all times relevant, served as the finance director of PH Media.

10. Please Hold, PH Media USA, Defendant Reed, Defendant Williamson, Defendant Francis, and Defendant Berisford are hereinafter collectively referred to as the "PH Media Defendants."

11. Defendant THE PORTER GROUP INC. (the "Porter Group") is a Maryland corporation with its principal place of business in the State of Maryland, at 10320 Little Patuxent Parkway, Ste. 1100, Columbia, MD 21044.

## JURISDICTION & VENUE

12. Plaintiff brings this complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

13. Venue is proper in the Southern District of New York, per 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred within this District.

14. Additionally, section 11(d) of the independent contractor agreement between Plaintiff and Please Hold provides that "[t]his Agreement will be governed by, and construed under and in accordance with, the internal laws of the State of New York, without reference to rules relating to conflicts of law."

## STATEMENT OF FACTS

**A. Defendants Fraudulently Induced Plaintiff to Enter into Two Different Employment Contracts**

15. PH Media is an industry-leading provider of audio branding services, music on hold, and on-hold marketing products.

16. On or about December 2015, the Porter Group, a recruiting company, actively recruited Plaintiff to work for PH Media as an outside salesman, or as PH Media referred to is as, a Business Development Manager ("BDM").

17. On or about December 2015, the Porter Group and Defendant Francis arranged for Defendant Williamson to interview Plaintiff in New York for a BDM position. During the interview, Defendant Williamson told Plaintiff that if he were to work as a BDM for PH Media, he would receive a base salary of $60,000 and commission(s). Defendant Williamson also told Plaintiff that he would provide feedback to and discuss Plaintiff's candidacy with Defendant Reed, who would ultimately decide whether or not to make Plaintiff an offer of employment.

18. On or about December 2015, the Porter Group presented Plaintiff with a formal offer of employment which was on PH Media letterhead and was signed by Defendant Williamson (the "Initial Offer").

19. The Initial Offer provided, among other things, that Plaintiff would be paid a base salary plus commission(s), which was consistent with what Defendant Williamson had told Plaintiff at his interview.

20. On or about January 2016, Plaintiff signed an agreement accepting the position at PH Media under the false pretense that the Initial Offer would govern the terms and conditions of his employment at PH Media.

21. Soon thereafter, on or about January 2016, Defendants required Plaintiff to attend a

mandatory training session at PH Media's headquarters in Manchester. Defendant Francis organized the training session and arranged for Plaintiff to attend. Specifically, Defendant Francis asked Plaintiff to send her a copy of his passport, his social security number and a check so that she could arrange for direct deposit.

22. While in Manchester for training, the PH Media Defendants required Plaintiff to sign a different employment contract, an independent contractor agreement (the "Independent Contractor Agreement").

23. The Independent Contractor Agreement contained completely different terms and conditions than those in the Initial Offer, including but not limited to that Plaintiff would be paid at an hourly rate and commission(s) instead of the base salary and commission(s) that was promised to Plaintiff in the Initial Offer and at his interview with Defendant Williamson.

24. The PH Media Defendants ostensibly never intended to honor the commitments contained in the Initial Offer. Instead, Defendants presented Plaintiff with the Initial Offer in an attempt to lure Plaintiff to PH Media's headquarters, on a different continent, in order to coerce Plaintiff to sign a completely different contract.

**B. The PH Media Defendants Failed to Uphold their Obligations under the Independent Contractor Agreement**

25. Notwithstanding the measures that the PH Media Defendants took to coerce Plaintiff to sign the Independent Contractor Agreement, the PH Media Defendants failed to uphold their obligations under it.

   1. In Direct Violation of the Independent Contractor Agreement, the PH Media Defendants Failed to Pay Plaintiff for Any of the Hours He Worked

26. Upon information and belief, Defendant Berisford was responsible for all of PH Media's financial decisions, including but not limited to all decisions related to how and when

Plaintiff was paid. Additionally, Plaintiff directed all of his complaints related to his pay to Defendant Berisford.

27. Exhibit A of the Independent Contractor Agreement provided that Plaintiff was "required to attend meetings with potential service users as requested by [PH Media] to demonstrate the benefits of [PH Media's] products."

28. In practice, Plaintiff typically worked 80 to 100 hours per week, which consisted of prepping for and attending as many as five meetings per day, often in multiple locations and/or states (the "Meetings"). Plaintiff was often required to prep for the Meetings until the middle of the night and on Sundays.

29. Nevertheless, the PH Media Defendants failed to pay Plaintiff for any hours worked in direct violation of the Independent Contractor Agreement which, as described above, required the PH Media Defendants to pay Plaintiff at an hourly rate, for all hours worked, plus commission(s).

30. Instead, the PH Media Defendants only paid Plaintiff his commission(s), and, even still failed to provide him with all commission(s) he earned.

31. Specifically, the PH Media Defendants typically entered into contracts with their clients for periods of three years whereby the PH Media Defendants provided their services in exchange for a monthly fee of $250. Under the Independent Contractor Agreement, in addition to being paid by the hour, Defendants were required to give Plaintiff the equivalent of two monthly fees, or $500, for any contract that he helped secure irrespective of whether the customer withdrew from the contract.

32. Notwithstanding that Plaintiff's commission(s) were the only form of income the PH Media Defendants paid to Plaintiff, the PH Media Defendants frequently denied Plaintiff his earned commissions when a client canceled a contract early, in direct violation of the Independent

Contractor Agreement.

33. Another scheme that the PH Media Defendants used to systematically and intentionally avoid paying Plaintiff for all hours he worked, in direct violation of the Independent Contractor Agreement, was by paying Plaintiff via block wire transfers (the "Wire Transfers").

34. Each Wire Transfer contained multiple weeks of pay at a time and was not accompanied by an explanation or breakdown of what the sum of money in the Wire Transfer represented.

35. Upon information and belief, the Wire Transfers contained arbitrary sums of money rather than the amount of money owed to Plaintiff under the Independent Contractor Agreement.

### 2. The PH Media Defendants Failed to Provide Plaintiff with 1099 Tax Forms in Violation of the Independent Contractor Agreement

36. Upon information and belief, PH Media was and continues to be an unregistered foreign entity nevertheless doing business in the State of New York and numerous other States.

37. The PH Media Defendants further violated the Independent Contractor Agreement by failing to properly account for the payments they made to Plaintiff, and/or to provide Plaintiff with a 1099 tax document.

38. Specifically, the Independent Contractor Agreement provided that "[PH Media] will, as appropriate, issue [Plaintiff] an Internal Revenue Service Form 1099-MISC with respect to the Fees described herein." The PH Media Defendants never provided Plaintiff with an Internal Revenue Service 1099-MISC, despite it being essential and "appropriate" for Plaintiff.

**C. The Porter Group Advanced PH Media's Fraudulent Scheme in order to Obtain its Own Commission(s)**

39. The Porter Group was aware of PH Media's fraudulent scheme and that, as a result of it, several employees desired to terminate their employment at PH Media.

40. Nevertheless, the Porter Group took active steps to ensure that it was paid its

commission for recruiting Plaintiff.

41. Specifically, Plaintiff contacted a recruiter at the Porter Group to express his dissatisfaction with his employment at PH Media. In response, the recruiter requested that Plaintiff wait ninety (90) days before resigning from his position so that the Porter Group could earn its commission for placing him. Dutifully, Plaintiff waited out the 90 days, resigning on a Sunday, by email.

### FIRST CAUSE OF ACTION
### FRAUD
**(as stated by Plaintiff against all Defendants)**

42. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

43. Upon information and belief, Defendants falsely, fraudulently, and with the intent to deceive and defraud Plaintiff, represented to Plaintiff that the terms and conditions set forth in the Initial Offer would govern Plaintiff's employment at PH Media.

44. Upon information and belief, Defendants knew that their representations were false and fraudulent, and Defendants never intended for the Initial Offer to govern Plaintiff's employment at PH Media.

45. Upon information and belief, at the time that Defendants made the Initial Offer to Plaintiff, Defendants knew that the representations were false and that the Independent Contractor Agreement would govern Plaintiff's employment at PH Media. Defendants knew the representations to be false and made them to deceive and defraud Plaintiff, and for the purpose of fraudulently inducing Plaintiff to work at PH Media.

46. Plaintiff had trust and confidence in Defendants, and believed in and relied on their honesty, fairness and good faith, believed the representations to be true, relied on them, and thereby

was induced to accept the job offer at PH Media.

47. Plaintiff would not have accepted the position at PH Media if the true facts had been known to him.

48. As a proximate cause of Plaintiff's reliance upon these representations and subsequent conduct of Defendants, Plaintiff suffered economic losses in an amount to be determined at trial, but in no event less than $75,000.

49. Defendants' actions were malicious and done willfully in conscious disregard of the rights of Plaintiff in that the actions were calculated to injure Plaintiff.  As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## SECOND CAUSE OF ACTION
## FRAUDULENT INDUCEMENT
**(as stated by Plaintiff against all Defendants)**

50. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

51. Defendants knowingly and intentionally misrepresented to Plaintiff that the terms and conditions set forth in the Initial Offer would govern his employment at PH Media.

52. Defendants never intended that the Initial Offer would govern Plaintiff's employment. Instead, Defendants knowingly made these misrepresentations to Plaintiff in order to induce him to work for PH Media.

53. Plaintiff reasonably relied on Defendants' representations that the Initial Offer would govern the terms and conditions of his employment because it was signed by Defendant Williamson and presented to him by the Porter Group, an agent of PH Media.

54. By claiming that Plaintiff would be working under the terms of the Initial Offer,

Defendants induced Plaintiff to work for PH Media which required him to travel to Manchester for a training session. Once Plaintiff was in an unfamiliar foreign country, the PH Media Defendants induced him to sign a different contract.

55. As a proximate cause of Plaintiff's reliance upon these representations and subsequent conduct of Defendants, Plaintiff suffered economic losses in an amount to be determined at trial, but in no event less than $75,000.

56. Defendants' actions were malicious and done willfully in conscious disregard of the rights of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

### THIRD CAUSE OF ACTION
### CONSPIRACY TO COMMIT FRAUD
**(as stated by Plaintiff against all Defendants)**

57. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

58. Plaintiff accepted employment at PH Media and flew to Manchester for a mandatory training session, based on Defendants' express representations that the terms and conditions set forth in the Initial Offer would govern his employment at PH Media.

59. Plaintiff accepted employment at PH Media based on Defendants' express representations that Defendants would in good faith abide by all the terms of the Initial Offer.

60. The statements made by the Defendants were false when made, and in truth, Defendants did not intend that the Initial Offer would govern Plaintiff's employment at PH Media.

61. Defendants made such statements with intent to deceive Plaintiff and to induce Plaintiff to work for PH Media.

62. Defendants intentionally and in bad faith completely disregarded the terms of the Initial Offer.

63. Upon information and belief, Defendants committed such fraudulent acts in order to coerce Plaintiff to accept employment with PH Media, requiring him to attend a mandatory training session in Manchester only to coerce him into signing a completely different employment contract, with materially different terms and conditions than those in the Initial Offer.

64. As a direct result of the Defendants' conduct, Plaintiff has been damaged in amount to be determined at trial, but in no event less than Seventy-Five Thousand Dollars ($75,000 USD).

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT
### (as stated by Plaintiff against the PH Media Defendants)

65. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

66. The Initial Offer and the Independent Contractor Agreement were enforceable contracts.

67. The PH Media Defendants have breached their contracts with Plaintiff by failing to uphold the Initial Offer and by failing to pay Plaintiff for all hours worked and to provide Plaintiff with 1099's as required under the Independent Contractor Agreement.

68. The PH Media Defendants have also breached the implied covenant of good faith and fair dealing by acting to deprive Plaintiff of the benefits of the Initial Offer and the Independent Contractor Agreement.

69. Plaintiff is entitled to recover damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (as stated by Plaintiff against the PH Media Defendants)

70. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

71. The PH Media Defendants received a benefit from Plaintiff by requiring or permitting him to perform work without pay.

72. The retention of that benefit by the PH Media Defendants without payment is inequitable and the PH Media Defendants have been unjustly enriched thereby.

73. The PH Media Defendants should be required to make restitution to Plaintiff in the amount the PH Media Defendants have benefited from his unpaid work.

74. Plaintiff has been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
### AIDING AND ABETTING FRAUD
**(as stated by Plaintiff against the Porter Group, Inc., Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford)**

75. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

76. Defendants participated in a scheme to defraud Plaintiff.

77. Defendants represented that the Initial Offer would govern the terms and conditions of Plaintiff's employment at PH Media.

78. Defendants knew at the time that the Initial Offer would not govern the terms and conditions of Plaintiff's employment with Defendants, but instead used the Initial Offer to induce Plaintiff to work for PH Media.

79. Plaintiff justifiably relied upon the false representations of Defendants that the Initial Offer would govern the terms and conditions of his employment at PH Media.

80. The Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford were aware of the fraudulent scheme engaged in by Defendants, and at all

time were well aware that the Initial Offer would not govern the terms and conditions of Plaintiff's employment at PH Media.

81. The Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford sought to profit from the fraudulent scheme. Seeking to maximize their profits from the fraudulent scheme, the Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford presented Plaintiff with the Initial Offer.

82. The Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford provided substantial assistance to the fraudulent scheme by presenting the Initial Offer to Plaintiff.

83. The Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford's participation in, and aiding and abetting of, the fraudulent scheme was integral to the scheme in that the scheme could not have been effectuated without the participation of the Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford.

84. The Porter Group, Defendant Reed, Defendant Williamson, Defendant Francis and Defendant Berisford's substantial assistance in the achievement of the fraud also served as a proximate cause of the fraud, as Plaintiff's damages were directly caused by accepting employment at PH Media after being presented with the Initial Offer.

85. As a direct result of the Defendants' conduct, Plaintiff has been damaged in amount to be determined at trial, but in no event less than Seventy-Five Thousand Dollars ($75,000 USD).

**SEVENTH CAUSE OF ACTION**
**CONSTRUCTIVE FRAUD**
**(as stated by Plaintiff against Defendant The Porter Group Inc.)**

86. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding

paragraphs of this Complaint as if fully set forth herein.

87. At all times relevant to this action, there existed between Plaintiff and the Porter Group a fiduciary and/or confidential relationship upon which Plaintiff justifiably relied to his detriment. Specifically, the Porter Group had access to confidential information concerning Plaintiff and was consequently obliged to maintain Plaintiff's confidences. By virtue of the relationship between Plaintiff and the Porter Group, a fiduciary duty existed.

88. Pursuant to this duty, Defendants owed the utmost good faith and fairness to Plaintiff in all matters pertaining to the Porter Group's conduct with respect to Plaintiff's employment at PH Media.

89. The Porter Group intentionally breached the aforesaid fiduciary duty by failing to disclose that the Initial Offer would not govern Plaintiff's employment at PH Media. Said breaches were financially motivated and intentional because the Porter Group wanted to receive a commission for placing Plaintiff.

90. By virtue of the aforesaid, Plaintiff suffered economic losses in an amount to be determined at trial, but in no event less than $75,000.

91. Defendants' actions were malicious and done willfully in conscious disregard of the rights of Plaintiff in that the actions were calculated to injure Plaintiff.  As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

### EIGHTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
**(as stated by Plaintiff against Defendant The Porter Group Inc.)**

92. Plaintiff repeats and re-alleges each and every one of the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

93. The Porter Group misrepresented to Plaintiff that the terms and conditions set forth in the Initial Offer would govern his employment at PH Media. The Porter Group had made such misrepresentations by presenting Plaintiff with the Initial Offer which was on PH Media letterhead and which was signed by Defendant Williamson.

94. The Porter Group had no reasonable grounds to believe that these misrepresentations were true.

95. The Porter Group intended to induce Plaintiff to rely on its misrepresentations. The Porter Group knew that because of its representation that the Initial Offer would govern Plaintiff's employment at PH Media, Plaintiff would accept employment at PH Media and the Porter Group would receive a commission for placing Plaintiff.

96. Plaintiff was justified in relying upon the Porter Group's representations that the Initial Offer would govern his employment at PH Media because the Porter Group, as the recruiter, was acting as an agent of the PH Media Defendants and presented the Initial Offer to Plaintiff on PH Media letterhead.

97. By virtue of the aforesaid, Plaintiff suffered economic losses in an amount to be determined at trial, but in no event less than $75,000.

## JURY DEMAND

98. Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

    a)    compensatory and punitive damages for perpetrating the above-described fraud on Plaintiff;

b) nominal damages for breach of contract for failing to properly and completely pay Plaintiff under the terms of the Independent Contractor Agreement;

c) compensation for lost wages, benefits, and other remuneration in an amount to be determined at trial, and the payment of reasonable costs, disbursements, and attorney's fees;

d) compensation for the opportunity costs of having left other gainful employment as a result of the Defendants' fraudulent conduct;

e) compensatory damage in an amount to be determined at trial for injury resulting from loss of prospective income;

f) punitive damages in an amount of no less than $5 million, for the wanton, malicious, and intentional nature of Defendants' conduct, and to deter them and others from further conduct such as that outlined above;

g) interest, costs, and reasonable attorneys' fees incurred by Plaintiff; and

h) any and such further relief as this Court deems just and proper.

Dated:  August 14, 2017
        New York, New York

Respectfully submitted,

MICHAEL FAILLACE & ASSOCIATES, P.C.


  /s/ Michael Faillace
Michael Faillace, Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C
60 East 42nd Street, Suite 4510
Tel: (212) 317-1200
Fax: (212) 317-1620
Email: michael@faillacelaw.com
*Attorneys for Plaintiff*